UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAEL ROMO, JR.,<br><br>                              Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE<br>CORPORATION,<br><br>                              Defendant. | Case No.:  19cv01120 JAH-MSB<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT [Doc. No. 70]** |

## PROCEDURAL BACKGROUND

Plaintiff, Ismael Romo, Jr., filed a complaint on June 14, 2019, asserting claims for (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12111 *et. seq.*; (2) disability discrimination for failure to reasonably accommodate, 42 U.S.C. section 12111 *et. seq.*; (3) disability discrimination for failure to engage in the interactive process, 42 U.S.C. section 12111 *et. seq.*; (4) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code section 12940 *et. seq.*; (5) disability discrimination for failure to reasonably accommodate, California Government Code section 12940 *et. seq.*; (6) disability discrimination for failure to engage in the interactive process, California Government Code section 12940 *et. seq.*; (7) violation of California Labor Code sections 1198.5(I), (k); (8) disability discrimination in violation of public policy; (9) wrongful

1

termination in violation of public policy; (10) retaliation in violation of California Government Code section 12940 *et. seq.*; (11) retaliation in violation of 42 U.S.C. section 12111 *et. seq.*; and (12) intentional infliction of emotional distress ("IIED"). Plaintiff names Costco Wholesale Corporation and Does 1 through 25 as defendants. Plaintiff alleges he suffers from diabetic neuropathy, a neurological condition affecting the nerves in his arms and legs, and he was placed on temporary light duty as a result and required two to three days off work per month. Complaint ¶¶ 11, 12, 12, 14 (Doc. No. 1). After he submitted a doctor's note requiring he be placed on permanent light duty, he alleges Defendant failed to engage in an interactive process to determine whether they could reasonably accommodate his work restrictions and limitations and failed to reasonably accommodate him. *Id.* ¶¶ 16, 17. He further alleges Defendant terminated his employment because of his disability and request for accommodation. *Id.* ¶ 18.

Defendant filed an answer on July 12, 2019, and the Honorable Michael S. Berg, United States Magistrate Judge, issued a scheduling order on August 13, 2019. The parties jointly moved for and were granted extensions of the discovery dates. Plaintiff filed a motion for leave to file a First Amended Complaint on July 20, 2020, which this Court denied.[1]

On October 26, 2020, Defendant filed a motion for summary judgment. Plaintiff filed an opposition on December 2, 2020, and Defendant filed a reply on December 9, 2020. The parties appeared for a hearing before this Court on December 16, 2020, after which the Court took the motion under submission.

## FACTUAL BACKGROUND

In 2014, Plaintiff began working as an Optical Assistant at the Anti-Reflective Coating ("ARC") department of Costco's National City Optical Lab. Def's Statement of Facts ("SOF") 1. The optical lab crafts and manufactures lenses for prescription eyeglasses

---

[1] The Court also denied Plaintiff's motion for reconsideration.

2

and sunglasses, assembles the lenses with the required frames, and prepares the finished products for shipping to Costco warehouses for members throughout the region. Def's SOF 2.

In 2015, Plaintiff was diagnosed with diabetic neuropathy.  Def's SOF 30; Pla's SOF 113. Diabetic neuropathy is an extremely painful chronic neurological condition causing pain, burning and numbness in his feet and legs. Pla's SOF 113.  As his neuropathy worsened, Plaintiff sought intermittent leave from work and in January 2016 submitted a medical certification from his doctor indicating he needed intermittent leave of two to three days per month due to his medical condition.  Def's SOF 37, 38; Pla's SOF 123-126.  In a letter dated February 4, 2016, Defendant notified Plaintiff that he was not eligible for FMLA or state law leave to cover his request for intermittent leave and explained it would excuse up to two days of absence each calendar month caused by his medical condition or Plaintiff could take personal medical leave through November 17, 2016.  Def's SOF 42; Pla's SOF 127.  He was disciplined through 2016 for absenteeism.  Def's SOF 50, 52; Pla's SOF 135.

After his neuropathy worsened, Plaintiff's doctor provided a medical certification dated December 22, 2016, explaining Plaintiff required intermittent leave up to two times per week for up to one day per episode.  Def's SOF 55; Pla's SOF 150-152.  On May 5, 2017, Defendant provided Plaintiff a letter explaining that he had exhausted his available FMLA or state law leave on March 29, 2017 and Defendant would excuse up to two full or four partial days per month due to his medical condition and gave Plaintiff the option to take personal medical leave. Def's 59; Pla's 156.  On May 15, 2017, Plaintiff declined to take personal medical leave and stated he would remain at work.  Def's SOF 60.

Plaintiff was disciplined for unexcused absences in July 2017.  Pla's SOF 165, 169. On October 4, 2017, Plaintiff was terminated from his job.  Def's SOF 79, Pla's SOF 179.

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P.

56(a).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Where the party moving for summary judgment does not bear the burden of proof at trial, as here, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case."  *Id*. at 325.  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).  "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885 (quoting *Celotex*, 477 U.S. at 323).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient.  *See Schneider v. TRW, Inc.*, 938 F.2d 986, 990-91 (9th Cir. 1991).  A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475

U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

## DISCUSSION

Defendant argues Plaintiff's claims fail because he was not qualified under the ADA or FEHA and for lack of causation and damages.  Plaintiff opposes the motion.

## I. Qualified under ADA or FEHA

Defendant agues Plaintiff's eleven causes of action which are based on disability discrimination, accommodation, and retaliation under the ADA or FEHA fail because Plaintiff cannot meet his burden to show he was able to perform the essential functions of his position with or without reasonable accommodation.

## A. Discrimination and Failure to Accommodate Claims (1, 2, 4, 5)

A *prima facie* case for discrimination and failure to accommodate under the ADA requires a plaintiff to demonstrate (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation, and (3) he suffered an adverse employment action because of his disability.  *Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).  Similarly, a plaintiff asserting a claim for discrimination or failure to accommodate under the FEHA must demonstrate (1) he suffered from a disability, (2) he was otherwise qualified to do his job, and (3) was subject to an adverse employment action because of his disability.  *Finegan v. County of Los Angeles*, 91 Cal.App.4th 1, 7 (2001); *Wilson v. County of Orange,* 169 Cal.App.4th 1185, 1192 (2009).

Defendant argues Plaintiff cannot meet his burden to show he was a qualified individual able to perform the essential functions of his optical assistant position because Plaintiff needed to be absent up to two or more of every five scheduled shifts and physical presence at the optical lab was an essential function of the job.

//

### 1. Regular Attendance as an Essential Function

Defendant contends Plaintiff's physical presence at the optical lab for his scheduled shifts was an essential function of his job because he could not perform any of the job duties when absent or remotely. Defendant maintains the optical assistant position required the use of large and heavy equipment on site at the optical lab and physical interaction and inspection of trays of prescription medical lenses that needed to remain onsite. Defendant further maintains Plaintiff's optical assistant position was a production job, and part of a greater production chain and his work was time-sensitive and, as such, regular attendance was an essential function of his position.

Plaintiff argues a dispute exists as to whether attendance was an essential function of his position. Although his job could not be performed from home, he contends he was one of approximately fifty interchangeable workers per shift who performed the same tasks, and management staffed the department with the expectation that approximately ten percent of the workers would be absent each day and he had no special skill upon which the department relied. Plaintiff further contends there is no evidence that other workers had to be pulled from other departments to cover his absences. Additionally, Plaintiff maintains his manager testified that his absences were not a big deal and Plaintiff could have been absent three or four times per week without an impact on the lab's ability to function. He further maintains the job description offered by Defendant was never seen by Plaintiff or his manager and it generally described various lab functions that were not applicable to his department. Plaintiff disputes Defendant's contention that his position was time sensitive and maintains there were no production quotas, no delays, no late orders, and no analysis ever performed at the time of his employment.

Defendant maintains Plaintiff's arguments that his job was not fast paced or time-sensitive and did not need to be completed as scheduled are beside the point because his job was a production job requiring his physical presence, and if he was not present to perform it, it either did not get done or another employee performed it in his absence. Additionally, Defendant maintains the undisputed evidence by those witnesses who

understood and had insight into the overall functioning of the optical lab establishes that employee absences did negatively impact it.

Regular and predictable job attendance is not a *per se* essential function of all jobs. *Humphrey v. Memorial Hospital Ass'n*, 239 F.3d 1128, 1135 n. 11 (9th Cir. 2001). However, the Ninth Circuit has recognized "[i]n those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). An optical assistant's duties included using equipment onsite at the optical lab to manufacture and assemble prescription eyeglasses and sunglasses and prepare them for shipping. This required Plaintiff to be onsite to perform his duties. While Plaintiff admits this, he maintains attendance was not essential because the job was not time sensitive and there were no production quotas and no evidence of delays or late orders. An employer may demonstrate a function is essential "because the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(1), (n)(2)(i). Evidence that the job was time sensitive or that his irregular attendance negatively impacted production is not necessary to demonstrate attendance is an essential function. The evidence demonstrates the optical assistant duties had to be performed onsite, and therefore, attendance is an essential function of the job.

**2.  Plaintiff's Ability to Perform the Essential Functions of the Job**

**a.  Defendant is not Precluded from Making this Argument**

Plaintiff suggests Defendant is precluded from arguing Plaintiff could not perform the essential functions of his position because Defendant's counsel admitted he could perform the essential functions of the position during a discovery dispute. Plaintiff maintains he relied on Defendant's position when he declined to pursue records withheld by Defendant.

Defendant contends Plaintiff strips counsel's statement of its critical context which is that it was made during a discrete dispute over Plaintiff's Request for Production No. 38, which sought job descriptions for any position that would not require more than five hours

of standing in a workday and Defendant's counsel explained that this request was unduly burdensome and not reasonably calculated to lead to admissible evidence because Defendant did not contend that Plaintiff's alleged inability to stand more than five hours prevented him from performing any essential functions of the position.  Defendant argues Plaintiff's assertion that he detrimentally relied on the statement is not supported by any evidence and is not reasonable given that Defendant served discovery two months' later that definitively reiterated its position that Plaintiff's inability to regularly attend work rendered him unable to perform its essential functions with or without reasonable accommodation.

Given the context of counsel's statement and the clear indication during ongoing discovery of Defendant's position that Plaintiff could not perform the essential functions of the job due to his irregular attendance, Defendant is not precluded from asserting that position here.

**b.  Plaintiff's Attendance**

Defendant contends the undisputed evidence establishes Plaintiff could not maintain a regular and reliable level of attendance at his job.  In support, Defendant points to Plaintiff's health care provider's certification dated December 22, 2016, that explained Plaintiff needed to be excused from work due to his disability up to two of every five shifts, plus an additional one to two shifts per month which meant Plaintiff would be absent without advance notice for 40% of his shifts and Plaintiff would require this accommodation for one year.

Defendant contends, the medical provider testified the true duration would be indefinite, and Plaintiff's disability would generally worsen over time.  Defendant also argues Plaintiff's actual pattern of absences and representations to the Social Security Administration ("SSA") confirmed that he could not perform the essential functions. Defendant maintains from January 1, 2017, through his termination on October 4, 2017, Plaintiff was absent at least 80 times and Plaintiff represented under oath to the SSA that

he became unable to work any job beginning October 4, 2017, the day his employment ended.

In response, Plaintiff argues a genuine dispute exists as to whether he could perform the essential functions of the job. He contends the evidence, including his ability to work nearly all his scheduled shifts within the two months before his termination, shows he could maintain a regular and reliable level of attendance. Plaintiff also argues Defendant's contention that his SSA application precludes his claims is misplaced because an application for disability benefits following a termination is not necessarily inconsistent with an employee's contention in support of an ADA claim that he could still perform the essential functions of his position with reasonable accommodation at the time of the termination. He maintains he represented in his SSA application that he became unable to work because of his disabling condition on October 4, 2017, and made no representation that he was "totally" or "permanent" disabled or that he could not work in any capacity, even with reasonable accommodation. Thus, he argues, his representations to the SSA and his testimony in this lawsuit are not inconsistent with his claims in this lawsuit. At most, he contends, it is evidence to be weighed by a trier of fact.

Defendant argues Plaintiff's contention that his attendance improved in the last two months of his employment is not supported by evidence and does not change what his actual medical leave restrictions were during that entire period of time, namely intermittent leave of two out of five shifts.

Plaintiff's statements on his SSA application do not preclude his claim. The Ninth Circuit has held that "neither application for nor receipt of disability benefits automatically bars a claimant from establishing that she is a qualified person with a disability under the ADA." *Johnson v. State, Oregon Dep't of Hum. Res., Rehab. Div.*, 141 F.3d 1361, 1367 (9th Cir. 1998). The court recognized that an individual may be disabled and entitled to benefits and also still be a qualified individual under the ADA if he can work with reasonable accommodations provided by his employer due to the different definitions of disability under the ADA and disability benefits-providers, such as SSA. *Id*. Defendant

9

19cv01120 JAH-MSB

does not suggest Plaintiff's statements bar his claim. Defendant, instead, argues the statements further support Plaintiff was unable to perform the essential functions of his job. The Court finds Plaintiff's statement on his application, completed subsequent to his termination, that he was unable to work at any job beginning the day he was terminated does not demonstrate he was unable to perform the essential functions of his position with a reasonable accommodation prior to the date of his termination.

The evidence demonstrates Plaintiff was and would continue to be absent from work when his symptoms prevented him from performing his duties and to seek ongoing medical treatment. According to the certification provided by his medical provider on December 22, 2016, Plaintiff was sometimes unable to perform one or more essential functions of his position. Def's Exh. 33 (Doc. No. 70-23). He required intermittent leave two times per week for three hours or one day per episode. *Id*. The certification also reported that Plaintiff would need to work less than his schedule occasionally when his symptoms flared and to take time off for medical treatment one day per month for four hours or 1 day. *Id*. The doctor reported Plaintiff required the leave only when his symptoms prevented him from completing his work tasks. Velazquez Depo. 45:11-47:21 (Doc. No. 78-14). While Plaintiff objects to the evidence submitted by Defendant in support of its contention that Plaintiff missed more than 80 days of work between January 1, 2017, and October 4, 2017, he does not dispute he missed more than 80 days of work during that time period.[2]

Plaintiff does not dispute that he required occasional and unplanned absences from work. Instead, he argues Defendant misapplies the proper standard by failing to address whether his request for accommodation of intermittent leave would pose undue hardship on Defendant.

//

//

---

[2] The evidence Plaintiff objects to is the same evidence he relies on in support of his contention that he was able to work nearly all his shifts the last two months of his employment.

10

19cv01120 JAH-MSB

**c. Reasonable Accommodation**

Defendant argues Plaintiff's need for intermittent absences could not be reasonably accommodated because, it would require Defendant to account for Plaintiff missing at least two out of every five shifts, with no advanced notice as to which shifts those would be and the only way it could ensure the essential functions of Plaintiff's job would be completed each shift required it have another trained employee ready to take Plaintiff's place and perform those essential functions in his absence.   Defendant contends this is not a reasonable accommodation as a matter of law because federal and California cases uniformly hold that the ADA and FEHA do not obligate an employer to reallocate the essential functions of a disabled employee's position to a different employee.   Additionally, Defendant contends the fact it previously excused Plaintiff from performing his essential functions cannot be used against it under the ADA and FEHA.

Plaintiff argues a genuine dispute exists as to whether he could perform the essential functions of his position with reasonable accommodations.   He contends Defendant focuses on the purported essential function of regular attendance without adequately addressing whether his request for accommodation of more than two days per month of intermittent leave would impose an undue hardship.   He maintains leave as a method of accommodation is widely accepted and reasonable on its face and argues the evidence shows his requests for accommodation posed no undue hardship.   He further argues Defendant cannot show any actual evidence of the nature and cost of accommodating Plaintiff's doctor's orders, or the effect of the accommodation on Defendant's operations.   Plaintiff contends these, in conjunction with Defendant's resources, weigh against a finding of undue hardship. Plaintiff maintains the evidence demonstrates Defendant never considered modifying its two-day limit on intermittent leave to explore potential reasonable accommodations.

Defendant contends Plaintiff's argument that Defendant is a large employer and excusing him from regular attendance would not have been unduly burdensome is not relevant because a reasonable accommodation has not been identified.   The only proposed

11

accommodation, Defendant maintains, is the one precluding Plaintiff from performing the essential function of regular attendance.

Plaintiff's insistence that Defendant is required to address undue hardship misconstrues the relevant law. Plaintiff bears the burden of demonstrating he is a qualified individual able to perform the essential functions of the job with reasonable accommodation. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999); *Green v. State of California*, 42 Cal.4th 254, 263-64 (2007). As such, Plaintiff bears the burden of demonstrating intermittent leave was a reasonable accommodation. An employer must show undue hardship after the plaintiff meets his burden. While the Court in *Nunes* explained a court evaluating a claim in a summary judgment motion "should weigh the risks and alternatives, including possible hardships on the employer," the case did not excuse a plaintiff from its burden or shift the burden to the defendant. 164 F.3d at 1247.

To meet his burden to defeat a motion for summary judgment, a plaintiff "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Under the ADA, a reasonable accommodation enables the plaintiff to perform the essential functions of the job. *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). Similarly, under the FEHA, a reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 974 (2008). Here, Plaintiff asserts intermittent leave of more than two days per month was a reasonable accommodation. He contends leave as an accommodation is widely accepted and reasonable on its face but only points to guidelines issued by the Equal Employment Opportunity Commission in support. Plaintiff does not explain how unpredictable, intermittent leave of uncertain lengths of time would enable Plaintiff to perform his job duties. Rather, it would excuse Plaintiff from performing the essential function of regular attendance which is not a reasonable accommodation. *See Samper*, 675 F.3d at 1239; *see*

also *Nealy v. City of Santa Monica*, 234 Cal.App.4th 359, 375 (2015) ("FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions") (citing *Lui v. City and County of San Francisco*, 211 Cal.App.4th 962, 985 (2012)).  Accordingly, the Court finds Plaintiff fails to raise a triable issue of fact as to the reasonableness of his proposed flexible leave accommodation and Defendant is entitled to judgment on Plaintiff's discrimination and failure to accommodate claims.

**B. Interactive Process Claims (3, 6)**

Defendant argues Plaintiff's claims for failure to engage in the interactive process similarly fail because Plaintiff fails to demonstrate he could perform the essential duties of his job with reasonable accommodation.  Plaintiff argues he presents evidence that Defendant knew about his disability since at least 2015 and contends he shows genuine disputes of material fact as to when the duty to engage in the interactive process was triggered with respect to his numerous requests for accommodation and whether such accommodations would cause Defendant undue hardship.  In reply, Defendant argues whether its duty to engage in the interactive process was triggered earlier is irrelevant to whether Plaintiff was a qualified individual under the ADA and FEHA.

Once they become aware of a need for accommodation, employers are obligated under the ADA and FEHA to engage in an interactive process to identify and implement possible reasonable accommodations.  *Dark*, 451 F.3d 1078, 1088 (9th Cir. 2006); Cal. Gov. Code § 12940(n).  However. "[t]here must first exist a reasonable accommodation that will enable the employee to perform the essential functions of the position."  *Kramer v. Tosco Corp.*, 233 F.App'x 593, 596 (9th Cir. 2007) (citing *Humphrey*, 239 F.3d at 1137–38 (9th Cir. 2001)); *Nadaf–Rahrov*, 166 Cal.App.4th at 980-81.

There is no independent cause of action under the ADA for failing to engage in an interactive process.  *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292 (7th Cir. 2015); *Kramer*, 233 F.App'x at 596.  Furthermore, "[i]f a disabled person cannot perform a job's "essential functions" (even with a reasonable accommodation), then the ADA's

employment protections do not apply." *Cripe v. City of San Jose*, 261 F.3d 877, 884 (9th Cir. 2001). Because Plaintiff fails to show a genuine issue as to whether he is a qualified individual under the ADA, his claim for failure to engage in the interactive process fails.

Failure to engage in the interactive process is a separate, independent violation under the FEHA. *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413 (2007). "To prevail on a claim under section 12940, subdivision (n) for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1018-19 (2009). During the interactive process, an employee does not have extensive information about possible accommodations or possible alternative positions an employer has but once the parties get the opportunity to engage in discovery during the litigation process, the employee must be able to identify an accommodation to prevail. *Id.* (citing *Wysinger*, 157 Cal.App.4th at 425 and *Nadaf-Rahrov*, 166 Cal.App.4th at 984). The only accommodation identified by Plaintiff, intermittent leave, is not a reasonable accommodation as discussed above. Accordingly, Plaintiff fails to raise a triable issue of fact as to his failure to engage in the interactive process claim under the FEHA.

**C. Retaliation Claims (8[3], 10, 11)**

Defendant argues Plaintiff cannot meet the elements required for a *prima facie* claim for retaliation because Plaintiff's request to be excused from the essential functions of his position is not cognizable under the ADA and FEHA. To prove a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brown*

---

[3] Plaintiff notes that Defendant only addresses retaliation and not the "other tort-based discrimination claim in violation of public policy" of claim 8. Pla's Opp. at 22, n.4. Defendant does not address this in its reply. Defendant did not specifically move for judgment on the public policy claim of the Eighth cause of action or the seventh cause of action for failure to produce a complete employment file. As such, this order does not address either claim, except to the extent Defendant seeks judgment as to those claims in its argument regarding lack of causation and damages.

*v. City of Tucson,* 336 F.3d 1181, 1187 (9th Cir. 2003) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000)).  Similarly, a *prima facie* case of retaliation under the FEHA requires a plaintiff show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action.  *Morgan v. Regents of University of Cal.*, 88 Cal.App.4th 52, 69 (2000).  The burden shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is used in both ADA and FEHA retaliation claims. *See Brown*, 336 F.3d at 1186-87; *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 32 Cal. Rptr. 3d 436, 444 (2005).

Plaintiff maintains he provided sufficient evidence to establish a genuine issue of material fact as to whether he engaged in protected activity and whether Defendant's reasons for terminating him were retaliatory.  Because Plaintiff's requested accommodation excused him from performing his essential duties, he fails to demonstrate he was involved in a protected activity and, therefore, fails to meet his burden.  Defendant is entitled to judgment on the retaliation claims.

**D. Plaintiff's Public Policy Claim (9)**

Defendant argues because Plaintiff's public policy claim is derived entirely from the failed ADA and FEHA discrimination claims, it too must be dismissed.  Plaintiff argues a genuine dispute exists as to whether he was able to perform the essential functions of his position with reasonable accommodation.  In addition, Plaintiff maintains he presents evidence raising a genuine issue of material fact as to whether Defendant was entitled to discipline, terminate, and otherwise discriminate against him for incurring absences that should have been protected under public policy and Defendant's own policies.

In his ninth cause of action, Plaintiff alleges Defendant

discriminated against Plaintiff by, after being notified of Plaintiff's disability, refusing to comply with Plaintiff's doctors' orders, forcing Plaintiff to incur unexcused absences from work, and eventually terminating Plaintiff's employment after Plaintiff informed Defendants that he would need to be placed on permanent light duty, per his doctor's orders, due to his medical condition.

15

Complaint ¶ 67.   Plaintiff's claim is entirely derivative of his ADA and FEHA discrimination and failure to accommodate claims for which Plaintiff fails to demonstrate a triable issue of material fact.  Accordingly, Defendant is entitled to judgment on the claim for wrongful termination in violation of public policy claim.  *See Sander v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996).

**E. IIED Claim**

Defendant argues Plaintiff's IIED claim fails because it is preempted by the California Workers' Compensation Act ("WCA") which is the sole and exclusive remedy for injuries an employee sustains in the workplace because it is premised exclusively on Defendant's alleged conduct that occurred during the course of Plaintiff's employment. Defendant also argues the IIED claim fails for lack of any "extreme and outrageous" conduct with the intent to cause, or reckless disregard of causing, emotional distress.

Plaintiff argues the exclusivity provision of the WCA does not preempt the IIED claim because he alleges disability discrimination which constitutes illegal conduct not contemplated by the compensation bargain.  He further argues he provides sufficient evidence from which a trier of fact could conclude Defendant's blatant violation of the law and public policy, with the intent to discriminate, constituted extreme and outrageous conduct.

IIED causes of action asserting injuries arising out of one's employment are preempted by the exclusivity provision of the WCA.  Cal.Lab.Code § 3600, *et. seq.*; *Shoemaker v. Myers,* 52 Cal.3d 1, 15-16 (1990); *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987) (Finding claims alleging misconduct based on actions which "are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances," fall with the exclusive remedy provisions of the WCA.).  However, conduct that contravenes public policy or exceeds the risks inherent in the employment relationship are not preempted by the WCA. *See Livitsanos v. Superior Court*, 2 Cal.4th 744, 754 (1992).   Claims based upon

16

discriminatory conduct from actions beyond mere personnel decisions ordinarily found in the workplace are not preempted by the WCA. *See De Peralta v. Fax Restaurant Concepts, LLC*, 2018 WL 748287 (C.D.Cal. 2018) (citing *Cole*, 43 Cal.3d 148).

Plaintiffs seeks relief for IIED for Defendant's discriminatory actions in failing to accommodate him with additional intermittent leave resulting in his termination. As discussed above, Plaintiff fails to raise a triable issue of fact to support that Defendant's conduct was discriminatory. Accordingly, the claims based upon personnel decisions are preempted by the WCA. Even if they were not preempted, Plaintiff fails to demonstrate extreme or outrageous conduct to support his claim. *See Hughes v. Pair*, 46 Cal.4th 1035 (2009).

## II.  Lack of Causation and Damages

Defendant argues Plaintiff's representations to the SSA, deposition testimony, and post-employment history demonstrating Plaintiff could no longer work any job beginning October 4, 2017, mandate summary judgment on all claims for lack of causation or damages. As discussed above, Plaintiff's statement on his application completed subsequent to his termination does not demonstrate he was unable to perform the essential functions of his position with a reasonable accommodation prior to the date of his termination. The Court further finds Plaintiff's inability to work any job due to his disability following his termination does not support a lack of causation as to claims for conduct taken before that date. Accordingly, Defendant is not entitled to judgment of all claims based upon lack of causation and damages.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiff's first, second, third, fourth, fifth, sixth, eighth (to the extent it asserts a claim for retaliation), ninth, tenth, eleventh and twelfth causes of action.

//

//

19cv01120 JAH-MSB

1    The motion is **DENIED** as to the remaining claims.

2  DATED:      September 20, 2021

3

4                                          JOHN A. HOUSTON
                                           United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19cv01120 JAH-MSB